MONROE, J.
George Landry died, leaving a will whereby he named Angelina Yrle his universal legatee and appointed her his executrix. His legal heirs brought suit to annul the will, and were so far successful as to obtain judgment reducing the legacy in question to one-tenth of the estate, payable from the movables (Succession of Landry, 114 La. 829, 38 South. 575); but, in so far as related to the appointment of the executrix, the will was left undisturbed. The heirs, assuming that the whole matter had been disposed of, proceeded to partition the property among themselves and to make what purported to be a final settlement with the counsel then representing the executrix, who, as it appears, was not authorized to that effect, and they were asking for the homologation of their proceedings, when the executrix filed an account, which one of the heirs opposed on the ground (among others) that the succession had been closed; and there was judgment in the district court homologating the partition and maintaining said opposition. On appeal to this court the judgment so rendered was reversed, and it was ordered that no distribution be made of the funds, then in the hands of the notary, resulting from the sale in the partition proceeding, and that the account of the executrix be reinstated. Succession of Landry, 117 La. 193, 41 South. 490.
As a preamble to her account, the executrix makes the following statement, to wit:
“The amount as per inventory is $9,109.72, to which must be added rents and revenues accrued since said inventory; but by reason of the ex parte interference of the heirs, who took premature and illegal possession of certain real estate and movables without awaiting a settlement in due course with the executrix, this account must be limited to actual operations of the executrix in due course of proceedings.”
She then states the active mass coming into her possession to have consisted of:
(1) Cash in bank.$. 361 80 '
(2) Movables ... ' 805 75
(3) From foreclosure of mortgage... 1,260 65
(4) “ “ “ “ ... 231 65
(5) Rents and revenues... 1,317 90
Total .. $3,977 81
As against which she shows debts, to the aggregate amount of $9,871.80, including certain sums said to be due to herself, and her claim to which she sets forth in her account as follows:
“Angelina Yrle is a creditor of the succession as follows, to wit: By the last will of the deceased she was left universal legatee; but the civil district court reduced the donation to one-tenth of the whole estate, with the qualification that said tenth should be collected out of the movables. She appealed, but said judgment was affirmed by the 'Supreme Court. She prefers, under the circumstances, to fall back upon her original claim, and abandon her commission as executrix. Her claim is predicated on services rendered as nurse and mandatory, besides advances by her to him in the course of said mandate. The said George Landry was, from September, 1897, to October, 1903, up to the date of his death, in exceedingly feeble health. Said executrix was employed by him, at first, during September, 1897, in the capacity of nurse, during the whole of which time he was constantly bedridden, requiring the services of a nurse day and night. Towards the end, besides, she attended as agent at the grocery, to which he was, up to his death, wholly incapable to attend in person. The services, as nurse, were fully worth the monthly sum of $60, and the commercial services, as agent, the monthly sum of $30. At. times he was in embarrassed circumstances, and occasionally applied to executrix for pecuniary assistance, stating to her that he was very old and infirm, and had but a short time to live, but that, to reimburse and reward her for her *793 services and assistance, she would have recourse later on his will, and that she would be fully remembered in said will. She did at different times, under the aforesaid circumstances, make advances to him in furtherance of said agreement, to wit: A. D. 1897, June 3, $10; 1898, January 27, $300; 1898, July 6, $60; 1899, Nov. 9, $7; 1900, June 20, $75; 1901, March 4, $10 — making an aggregate of $627. The will of the deceased was intended by him, and by him was communicated to her, as a formal'recognition of her services as nurse and as agent, including financial aid aforesaid. So that she was, and still continues to be, a creditor of the deceased and of his succession in the aggregate sum of $4,920, with legal interest from 24th of October, 1903, date of his death — the said sum to be held, with others aforesaid, secured by privilege on all the properties, real and personal, inventoried, but illegally and by ex parte proceedings wrested from her administration, without so much as going through regular rendition of account and discharge, $4,920. * * * Albert Voorhies, attorney’s fees, for rendition of account and discharge, $150. For reserved costs of court, publication, etc., $100.”
Elizabeth Oscar, professing to appear for herself and her coheirs, had opposed the account originally on the grounds that the succession had been closed and that there had been a final settlement between the executrix and the heirs; that there was nothing due by the decedent to the executrix for services and advances; and that .the claim therefor is prescribed. At a later period (after it had been decided by this court that the succession was not closed and that there had been no final settlement with the executrix) Augustin Landry, another heir, filed a general opposition, alleging that all the assets are not accounted for, and that the debts and charges are too vaguely set forth, and joining otherwise in the opposition previously filed by Elizabeth Oscar. The executrix charges herself, as we have seen, with a total of $3,977.81, derived from various sources, and the judge a quo found that she should be charged with $208.40 in addition, and there appears to be no complaint on that score. As to the credit side of the account, we find the following in the brief which has been filed herein on behalf of the opponents, to wit;
“Let us now take up the final account filed by Miss Yrle. Before doing so, let us bear in mind that, although it enumerates a great many creditors, it really concerns but one., and that is Miss Yrle herself. All the other items placed on the” account “were paid long ago, under an agreement between the heirs and Miss Yrle.”
Proceeding, therefore, upon the theory that the executrix is to be charged with $208.40 for which she has not yet accounted, we shall confine our inquiry to the claim asserted by her. It is contended by her learned counsel that the agreement between her and the decedent was that she should receive $20 a month as part of the compensation to be allowed for her services, and that, inasmuch as the services' were worth more than that amount, the balance should be provided for by the decedent in his will. We do not so understand the agreement, according to our conception of which she undertook to render certain menial services for the stipulated wage of $20 a month, which we think was fairly compensatory, and which, upon his falling behind in the payment thereof, the decedent assured her would be made good by the provisions of his will. The will, however, speaks for itself. Its meaning has been determined by a judicial decree. It does not purport, and has not been held, to recognize any debt; and no such effect can be attributed to it as the result of the unsupported parol evidence of the executrix, who claimed under it as universal legatee, and has been recognized as a legatee to the extent of one-tenth of the estate, payable from the movables. The claim for services as nurse has therefore been properly considered upon its own merits, and has been properly held to be barred by prescription, save in so far as it represents the services rendered within the year preceding the death of the party to whom they were rendered. Oiv. Code, art. 3534.
The evidence shows that, during the 20 months which immediately preceded the death of the decedent, the executrix also rendered him service as shopwoman, or clerk, in a grocery store, and we think she was *795 properly allowed $20 a month therefor. In support of her claim for $300, said to have been advanced on January 27, 1898, and $60, said to have been advanced on July 6, 1898, the executrix produced a note for $300, made by the decedent to his own order, and by him indorsed, dated July 1, 1896, payable in one year, and extended for one year, so that it finally matured in July, 1898, and a similar note for $60, dated July 6, 1897, payable in one year. In support of her claims for $10, said to have been advanced on June’3, 1897, for $7, said to have been advanced on November 9, 1899, for $75, said to have been advanced on June 20, 1900, and for $10, said to have been advanced on March 4, 1901, she produced her checks, drawn to the order of the decedent and by him indorsed and collected, dated, respectively, June 3, 1899, November 29, 1899, June 20, 1900, and March 4, 1901. And, as the decedent died on October 24,1903, the judge a quo properly held that the claims were barred by the prescription of five and three years applicable to promissory notes and “money lent.” Oiv. Code, arts. 3538, 3540.
Our learned Brother of the district court ordered that the account be amended by adding to the active mass a sum of $248.95, the history of which is as follows:
Upon the rendition by this court of the judgment (affirming that of the district court; reducing the legacy to the executrix to one-tenth of the estate, the counsel who then represented the legatee (and executrix), not being advised of the claim for services and advances which is now set up, considered that the litigation was at an end, and proceeded to make a settlement with the heirs at law, whereby they approved the payment that had been made by the executrix (waiving the filing of an account), and there was turned over to them a balance of $1,144.15, which was in bank to the credit of the executrix, and which figures in the settlement as follows, to wit:
Received of Miss Yrle (cash in bank) .$1,144 16
Cash in her hands . 208 40
- $1,852 55
Inventory of real estate.»... 4,500 00
$5,852 55
Ten per cent, of which is. 585 25
Less cash retained by Miss Yrle.. $ 208 40
Costs paid by heirs:
Stenographer .$92 00
Clerk and sheriff . 34 00
Recording judgment. 1 00
- 127 90 336 30
Check to Chas. J. Theard for. $ 248 95
Deduct from above amount costs paid * * * for Miss Angelina Yrle in suit against her . 167 30
Leaving balance in favor of Miss Yrle $ 81 65
Now, it is true that this court held that the settlement was unauthorized; but the fact remains that, of the $248.95 which was thus returned to her counsel, $167.30 has -been devoted to the payment of a debt due by her, and the balance, of $81.30, is in the hands of her then counsel awaiting her orders. We are therefore of opinion that (without approving the settlement in any way that would conclude her with respect to her present claim) the executrix is properly charged with the amount in question. Beyond this, the judgment appealed from allows $150 as a fee to the present counsel of the executrix for filing and defending the account, and $100 for future costs, both of which amounts, we think, are reasonable. And the judgment deals with one or two other matters concerning which there is no dispute; the only other disputed item being one of $81.38, with which the executrix credits herself as having been paid to B. Hein & Co., and which, for lack of proof, the judge a quo ordered to be stricken off. We are, however, of opinion that, in view of the admission of counsel that “all the other items placed on the account,” save those representing the individual claims of the executrix, “were paid long ago, under an agreement between the heirs and Miss Yrle,” she should be allowed the credit in question.
It is therefore ordered, adjudged, and de *797 creed that the judgment appealed from be amended, by restoring item No. 9, for $81.38, to the passive side of the account, and, as amended, affirmed; the opponents and appel-lees to pay the costs of the appeal.